UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------X

Andy Bierer,

                          Plaintiff,      CV-05-2459 (CPS)


    - against -                           MEMORANDUM OPINION
                                          AND ORDER


Glaze, Inc. d/b/a
Headline Products, LLC

                          Defendant.

----------------------------------------X

SIFTON, Senior Judge.


        Plaintiff Andy Bierer ("Bierer") brings this action against

Defendant Glaze, Inc., d/b/a Headline Products, LCC ("Glaze") to

recover damages arising from the allegedly wrongful termination

of Plaintiff's employment contract.  Glaze hired Bierer to

oversee the marketing of a line of products using the "Good

Housekeeping" label owned by nonparty Hearst Magazines

("Hearst").  After Glaze lost its contract to use Hearst's label,

Glaze terminated Bierer's employment on the ground of "illegal"

use of a company cell phone for personal purposes.  Glaze also

refused to give Plaintiff his severance package allegedly called

for by the employment agreement.  Plaintiff contends that the

asserted basis for his termination is frivolous and alleges

claims for: (1) breach of contract, (2) quantum meruit, and (3)

willful failure to pay damages under New York Labor Law §§ 198(1) and 198(1-a).[1] Defendant asserts a counterclaim for breach of the employment agreement, seeking as damages the amount of compensation and benefits provided to Plaintiff by the Defendant during his employment.

Presently before the Court are the parties' cross-motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. For the reasons that follow, Plaintiff's motion for summary judgment is granted in part and denied in part. Defendant's motion is denied and the counterclaim is dismissed.

---

[1] Plaintiff demands in his complaint:

(a)     judgment declaring Defendant violated the New York Labor Law;

(b)     that Plaintiff be made whole in the form of back pay, front pay and afforded all benefits which would have been afforded Plaintiff but for Defendant's breach of contract;

(c)     that Defendant be ordered to compensate, reimburse and make the Plaintiff whole for compensatory damages in an amount to be determined at trial;

(d)     that Defendant be ordered to pay Plaintiff prejudgment interest;

(e)     that Defendant be ordered to pay the costs and disbursements of this action, including Plaintiff's attorneys' fees;

(f)     that Defendant be ordered to cease the use of Plaintiff's confidential and personal information; and

(g)     for such other and further relief as may be just and proper.

In Plaintiff's Rule 56.1 statement accompanying Plaintiff's motion for summary judgment, Plaintiff further states that

[a]s a result of Defendant's breach of Plaintiff's employment contract, Plaintiff has incurred damages consisting of the following: one year of severance pay, loss of continued employment benefits (medical/life insurance) for one year, loss of vehicle reimbursement, loss of home office reimbursement and loss of bonus.

**BACKGROUND**

The following facts are drawn from the complaint, Local Rule 56.1 statements, affidavits, depositions, and exhibits submitted in connection with these motions.  Disputes are noted.

Plaintiff Bierer is a citizen of the state of New York. Defendant Glaze is a New Jersey company with its principal place of business in Edison, New Jersey.  This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) since Plaintiff and Defendant are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs.

Glaze is a small importer and wholesale distributor, selling a variety of consumer products, such as household cleaning supplies, kitchen items, automotive products, electronics, and toys, to retail wholesalers.  For twenty years, Glaze has sold merchandise to several New York companies.  Mr. Bihari Lund ("Lund") is the President of Glaze.

In 2003, Glaze sought to expand its business by selling name brand or licensed consumer products.  Lund created Headline Products LLC that year for the purpose of marketing these products.  On July 10, 2003, Glaze entered into a license agreement with non-party Hearst Magazines to use the Good Housekeeping seal to market a line of cleaning tools.

On July 25, 2003, Glaze hired Bierer to oversee the marketing of Good Housekeeping products.  After an in-person interview in New Jersey and negotiations by phone and email, Bierer signed an employment contract in New York.  According to the employment contract, Bierer's title was "Director of Sales and Marketing – Good Housekeeping Division."  His annual base salary was $145,000 per year.  Under the heading "Home Office," Glaze agreed to "provide or reimburse employee for a Laptop Computer, digital service, fax, color copier, dedicated phone lines for office and fax."  Glaze also agreed under the contract to reimburse Bierer's travel expenses, including airfare, lodging, meals, and cell phone bills, anticipating that Bierer would need to travel to promote sales and market Good Housekeeping products.  In addition, Glaze covered "all costs except gas associated [with] the leased vehicle."

Under the severance provisions of the employment agreement, Glaze was to pay Bierer one year's salary, plus benefits for one year if Glaze terminated the contract within three years of Bierer's initial employment.  The contract provided that severance would be paid "if employee is terminated for any reason (except if employee is terminated for any illegal activity)."

While Bierer's employment with Glaze commenced on July 25, 2003 when Bierer signed the employment contract, Bierer started working for Glaze on September 2, 2003.  During the first couple of weeks, Bierer came to the Edison, New Jersey office of Glaze

nearly every day for training.  On September 25, 2003, Mark

Weinberger, a Glaze employee, sent an email to Lund, saying that

Bierer had

> indicated he would like to begin working out of the house a
> few days of the week, as he is now averaging [three] hours
> each way to and from the office.  I know we indicated to him
> that this would be possible, however, we need to set up some
> parameters.

> Nearly all of our preferences would be for him to begin
> hitting the road, hence there would be no need for him to
> come into the office, however, until such time as he is up
> to speed and has his normal class of trade to call on, I
> would recommend that we come up with some plan.

> My initial thoughts are that he spend anywhere from 2 to 3
> days a week in the office, unless of course there is a
> pressing reason such as a meeting being held in Edison
> requiring his attendance.

Lund states in his affidavit that "I agreed with Weinberger's

proposal, and after that time, Bierer was to be in the office 2

to 3 days per week while he worked on the Hearst account."

In addition to managing the Hearst account, Bierer solicited

business and made sales in New York State on behalf of Glaze,

Inc.  Bierer states that he also created a line of cleaning wipes

for Glaze to sell soon after his employment with Glaze began.

During the period of Bierer's employment, Glaze also sold items

at a trade show in New York City.

In November 2004, Glaze informed Hearst that Glaze could not

continue to sell products under the license agreement due to

adverse market conditions.  Hearst terminated the license

agreement with Glaze on March 2, 2005 and commenced a lawsuit against Glaze for breach of contract.

Because sales decreased following the loss of the Hearst account, Lund and Bierer entered negations to revise Bierer's employment terms.  According to email correspondence between Lund and Bierer in late February and early March, no new employment terms were agreed upon.  Bierer did not respond to the draft agreement Glaze had proposed.  On March 9, 2005, Lund stated to Bierer via email that "we were expecting you in the office every day" following Bierer and Lund's agreement to renegotiate Bierer's employment terms.  When Bierer did not come to the office, Lund wrote to Bierer, stating "[p]lease understand that for each day you are not in the office, you will not be paid." In a subsequent exchange of emails, Bierer asserted that according to the employment agreement, he was to work from his home office, as he had done for the past year, and was therefore not contractually bound to come to the office every day.  Lund countered that Bierer's salary and benefits originally contemplated Bierer's frequent travel for business purposes. Because Bierer's responsibilities no longer required much travel, Lund determined that Bierer should come to the office each day.

In mid-March 2005, Lund also asked Bierer to provide detailed records of his cell phone use.  The cell phone was in Bierer's name and Bierer had owned the phone prior to his employment with Glaze.  He retained the same phone number.

Bierer submitted monthly invoices for compensation for his cell phone use, but he did not furnish the detailed records Lund requested. A Glaze employee contacted Bierer's cellular telephone services provider and obtained copies of the statements, which showed that Bierer had made calls to Charles Schwab, a financial services company. These calls were not related to Bierer's employment with Glaze. At the same time, Plaintiff rarely exceeded his monthly allotment of "free" cell phone minutes. Lund states in his deposition that Glaze has no policy prohibiting the use of company phones for personal calls. Both Lund and Weinberger state that they have used their company phones to make personal calls. Lund also did not inquire about the terms of Bierer's calling plan.

On March 31, 2005, Bierer stated via email that, based on his attorney's advice, he would not sign the draft employment agreement Glaze had proposed in early March. He wrote, "[u]ntil we both sign on the dotted line, all terms and conditions are still in effect from my original agreement." Later that day, Glaze terminated Bierer's employment agreement "based upon [Bierer's] illegal activity of misappropriating company funds through the use of our company paid cell phone bill for personal profit . . . ." According to Defendant, since Plaintiff's cell phone use constituted "illegal activity," Plaintiff was not entitled to severance benefits pursuant to clause 14 of

Plaintiff's employment agreement. The company has, however, made
no criminal complaint against Plaintiff.


**DISCUSSION**

Jurisdiction

Because diversity jurisdiction is premised on 28 U.S.C. §
1332, "the Court must apply the law of the state in which it sits
when determining whether personal jurisdiction exists over each
defendant."[2] *Daou v. Early Advantage, LLC*, 410 F.Supp.2d 82, 87
(citing *Pianelli v. Hershey*, 2000 WL 98098, at *2 (N.D.N.Y. Jan.
28, 2000). Accordingly, New York law applies in determining
whether this Court has personal jurisdiction over Defendant.

New York courts have construed New York Civil Practice Law
and Rules ("CPLR") § 301 to allow personal jurisdiction over a
non-domiciliary defendant corporation if the defendant is
"engaged in such a continuous and systematic course of 'doing
business' here as to warrant a finding of its 'presence' in this
jurisdiction." *Landoil Resources Corp. v. Alexander & Alexander
Services, Inc.*, 918 F.2d 1039, 1043 (2d Cir. 1990) (citations
omitted). Lund states in his deposition that Glaze has sold
products to companies in New York for twenty years and continues
to do so. During Bierer's employment, Glaze sold products at a
New York City trade show. Glaze also had property in New York to

---

[2] Defendant claims in its answer that this Court lacks personal
jurisdiction, but has not made a motion pursuant to Rule 12(b)(1) of the Federal
Rules of Civil Procedure.

furnish Bierer's home office. *See Landoil Resources Corp.*, 918 F.2d at 1043 (noting that courts consider several factors in ascertaining jurisdiction under CPLR § 301 such as "the existence of an office in New York; the solicitation of business in New York; the presence of bank accounts or other property in New York; and the presence of employees or agents in New York"). Moreover, because Bierer primarily worked from his home office in New York and made sales in New York on Glaze's behalf, Bierer was present in New York as a Glaze employee. *Cf. Daou v. Early Advantage, LLC*, 410 F.Supp.2d 82, 93 (N.D.N.Y. Jan. 6, 2006) (finding that defendant was doing business in New York partly because defendant approved plaintiff's home office and because plaintiff performed work on defendant's behalf in New York State). Because it appears that Glaze regularly solicits and does business in New York, this Court would appear to have jurisdiction over it pursuant to CPLR § 301. *See id* (stating that "once solicitation is found in any substantial degree very little more is necessary to a conclusion of doing business") (citing *Aquascutum of London, Inc. v. S.S. American Champion*, 426 F.2d 205, 211 (2d Cir. 1970)) (internal quotations omitted).

## Summary Judgment Standard

Summary judgment is appropriate "[w]hen the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co., Ltd. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 587 (1986).  Rule 56 of the Federal Rules of Civil Procedure provides for summary judgment "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as matter of law."  FED. R. CIV. PRO. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  "An issue of fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Elec. Inspectors, Inc. v. Vill. of E. Hills*, 320 F.3d 110, 117 (2d Cir. 2003).  A fact is material when it "might affect the outcome of the suit under the governing law." *Id.*

The party seeking summary judgment has the burden of demonstrating that no genuine issue of material fact exists. *Apex Oil Co. v. DiMauro*, 822 F.2d 246, 252 (2d Cir. 1987).  In order to defeat such a motion, the non-moving party must raise a genuine issue of material fact.  Although all facts and inferences therefrom are to be construed in the light most favorable to the non-moving party, the non-moving party must raise more than "a metaphysical doubt" as to the material facts. *Matsushita*, 475 U.S. at 586; *Harlen Assoc. v. Vill. of Mineola*, 273 F.3d 494, 498 (2d Cir. 2001).  The non-moving party may not rely on conclusory allegations or unsubstantiated speculation. *Twin Labs., Inc., v. Weider Health & Fitness*, 900 F.2d 566, 568

(2d Cir. 1990).  Rather, the non-moving party must produce more than a scintilla of admissible evidence that supports the pleadings.  *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289-90 (1968); *Niagara Mohawk Power Corp. v. Jones Chem. Inc.*, 315 F.3d 171, 175 (2d Cir. 2003).

The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, there is a genuine issue for trial.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Pinto v. Allstate Ins. Co.*, 221 F.3d 394, 398 (2d Cir. 2000).


First Claim: Breach of Contract

Bierer asserts that Defendant breached the employment agreement when Defendant terminated his employment "for pretextual reasons" and failed to give Bierer severance pay and other employment benefits as provided in the contract.

Under New York law[3], "an action for breach of contract
requires proof of (1) a contract; (2) performance of the contract
by one party; (3) breach by the other party; and (4) damages"
resulting from the breach.  *See First Investors Corp. v. Liberty
Mut. Ins. Co.*, 152 F.3d 162, 168 (2d Cir.1998) (*quoting Rexnord
Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525 (2d Cir.1994)).
There is no dispute that a contract existed between Bierer and
Glaze, Inc.  While the circumstances that gave rise to the
employment agreement of July 25, 2003 changed, there is no
"genuine dispute" that the July 2003 employment agreement
remained in effect until new terms could be agreed upon and set
forth in a new contract.[4]  Glaze's refusal to pay Bierer
severance benefits after terminating Bierer's employment would,
accordingly, constitute a breach if Bierer performed and there is
no other basis excusing Glaze's non-performance under the
contract.

Defendant argues: (1) that it is not required to pay
severance benefits to Bierer because he engaged in "illegal

---

[3] Because there is no conflict between the substantive rules of New York and
New Jersey regarding breach of contract, I will apply New York law to the breach
of contract claim. *See Curley v. AMR Corp.*, 153 F.3d 5, 12 (2d Cir. 1998) ("It is
only when it can be said that there is no conflict that New York will dispense
with a choice of law analysis."); *Blue Ridge Farms, Inc. V. Crown Equipment Corp.*,
No. 01-8460, 2005 WL 755756, at *9 (E.D.N.Y. Mar. 28, 2005)(applying New York law
after finding no significant difference between New York and Ohio contract laws).
    To establish a breach of contract claim under New Jersey law, "a party must
allege that (1) a contract existed, (2) breach of that contract occurred, (3)
damages resulted therefrom, and (4) the movant performed its own contractual
duties."  *Zinn v. Seruga*, No. 05-3572, 2006 WL 2135811, at *9 (D.N.J. Jul. 28,
2006).  These elements are virtually identical to those under New York law.
[4] In a March 25, 2005 email exchange, Bierer and Lund fixed on a reduction
in Bierer's salary, but determined that Bierer would continue to be paid according
to the terms of the original agreement until they had "put the new agreement to
bed," that is, finalized the new agreement in writing.

activity"; (2) that Bierer's failure to come to the Glaze office in Edison, New Jersey at Lund's request was a material breach which excused Glaze from further performance; and (3) that Glaze's fulfillment of its obligations under Bierer's employment contract became impossible because it lost the Hearst business. I will consider each of these arguments in turn according to New York law. *See Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1540 (2d Cir. 1997) ("[T]here is no authority for the proposition that New York courts would apply the law of one jurisdiction to a breach of contract claim and the law of another jurisdiction to an affirmative defense to that claim.").

*(1) "Illegal Activity"*

Defendant asserts that it is not required to pay Bierer severance benefits because Bierer engaged in "illegal activity" when he used his "cell phone for non-business purposes even though the cost of the phone service was reimbursed and paid in full by the defendants as a business expense." Defendant's Brief in Support of Motion for Summary Judgment, p. 1.

The plain meaning of illegal activity is, as Defendant concedes, "contrary to law." The only laws to which Defendant points which Plaintiff acted in violation of are the laws prohibiting embezzlement or misappropriation of property. New York Penal Law § 155.05 provides:

> 1.  A person steals property and commits larceny when, with intent to deprive another of property or to appropriate the same to himself . . . , he wrongfully takes, obtains or withholds such property from an owner thereof.
>
> 2.  Larceny includes a wrongful taking, obtaining a withholding of another's property . . . , committed in any of the following ways:
>
> (a) By conduct heretofore defined or known as common law . . . larceny by trick, embezzlement, embezzlement or obtaining property by false pretenses.[5]

Here no property belonging to Defendant was taken or withheld. The phone itself belonged to Plaintiff.  Since none of the personal phone calls placed on the phone increased the amount of money which Defendant was contractually obligated to reimburse Plaintiff for to pay for the use (or availability) of the phone for business purposes, no monies belonging to Defendant were obtained by false representation concerning the use of the phone. Cases of embezzlement in the employment context have concerned the intentional taking of an employer's money or property for personal use, depriving the employer of company funds.  *See,*

---

[5] I consider the alleged "illegal activity" under New York law because the "illegal activity" is implicated in an affirmative defense to a contract claim, not as a separate allegation.  *See Lazard Freres & Co. v. Protective Life Ins. Co.*, 108 F.3d 1531, 1540 (2d Cir. 1997) (declining to apply the law of different jurisdictions where both a contract claim and tort allegations are implicated because "there is only a contract claim, with an affirmative defense that sounds in tort").

In all events, New Jersey law concerning theft or embezzlement is substantively the same as New York's:

> A person who purposely obtains or retains property upon agreement or subject to a known legal obligation to make specified payment or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, if guilty of theft if he deals with the property obtained as his own and fails to make the required payment or disposition.

New Jersey Code of Criminal Justice, 2C:20-9. Theft by failure to make required disposition of property received.

*e.g., U.S. v. Allen*, 201 F.3d 163, 165-66 (2d Cir. 2000)
(employee wrote personal checks on company account, issued
unauthorized payroll checks to herself, and used company credit
card for personal expenses); *U.S. v. Butler*, 954 F.2d 114, 117
(2d Cir. 1992) (employee sought reimbursement for expenses when
such expenses were already included in his benefits, enabling him
to "double-dip").


*(2) Not Coming to Work*

Defendant next argues that Bierer's refusal after the loss
of the Hearst business to come to the Glaze, Inc. office in
Edison, New Jersey more than one day per week was a material
breach of his employment agreement which excused Glaze from all
contractual obligations to Bierer. However, Glaze, Inc. agreed
to provide Plaintiff severance "if employee is terminated for *any
reason* (except if employee is terminated for any illegal
activity)" (emphasis added). New York courts have interpreted
the meaning of "any reason" to encompass all circumstances except
those exceptions stated in the employment contract.[6] *See, e.g.,
Reeves v. Continental Equities Corp. of America*, 725 F.Supp 196,
197-98 (S.D.N.Y. Nov. 20, 1989) (requiring terminated employee to
show that his termination resulted in "reduction of work force"

---

[6] Because I have determined that New York law applies to the breach of
contract claim, I accordingly interpret the contract's provisions according to New
York law. *See, e.g., Totalplan Corp. Of Am. v. Colborne*, 14 F.3d 824, 832 (2d Cir.
1994) (interpreting contract under New York law after determining that New York
law applied to breach of contract claim).

as specified in severance provisions of employment agreement in order for employee to claim severance); *Gumbs v. Hall*, 2000 WL 234441, at *2 (2d Cir. 2000) (ascertaining whether terminated employee was discriminated against and improperly denied severance where agreement provided for severance if employee was "terminated for any reason other than cause"); *Young v. CIGNA Co.*, No. 98-2903, 1998 WL 895766, at * 2 (S.D.N.Y. Dec. 21, 1998) (determining whether employee was entitled to severance pursuant to employment agreement which provided severance if employee was "terminated for any reason other than job elimination"). Indeed, the Court of Appeals has construed the meaning of "any reason" to include the terminated employee's own alleged breach. *Ohanian v. Avis Rent a Car System, Inc.*, 779 F.2d 101, 110 (2d Cir. 1985). Because the terminated employee had forfeited his right to continued employment through his breach, the terminated employee was only entitled to severance. *Id*. Therefore, because Bierer's refusal to come to work at Lund's request does not constitute "illegal activity," Glaze retains its obligation to pay Bierer his severance under the employment agreement.[7]

---

[7] I also note that Bierer's refusal to come to the New Jersey office does not necessarily mean that he materially breached his employment obligations. The agreement expressly provided under clause 13 that Bierer would work from a home office. Irrespective of how many days per week Bierer was asked to come to the New Jersey office, the Home Office provision shows that Bierer's full-time presence in that office was not anticipated. In an email dated September 25, 2003, Weinberger reported to Lund that at the time Bierer was undergoing his initial training, he was "averaging three hours each way to and from the office" and that Glaze had "indicated to [Bierer] that [his working from home] would be possible." Glaze, Inc. clearly understood the inconvenience Bierer would face if he were required to come to the office every day as Lund requested in March 2005. Moreover, Bierer continued to work from home after Glaze lost its contract with Good Housekeeping.

*(3) Impossibility or Frustration of Purpose*

Glaze further argues that it should be discharged from its obligations to Bierer because the loss of the Good Housekeeping contract either rendered Glaze's performance of the employment agreement impossible or frustrated the purpose of the employment agreement. "Impossibility excuses a party's performance only when the destruction of the subject matter of the contract or the means of performance makes performance objectively impossible. Moreover, the impossibility must have been produced by an unanticipated event that could not have been foreseen or guarded against in the contract." *Chase Manhattan Bank v. Traffic Stream (BVI) Infrastructure Ltd.*, 86 F.Supp.2d 244, 255 (S.D.N.Y. Feb. 2, 2000) (quoting *Kel Kim Corp. v. Central Markets, Inc.*, 70 N.Y.2d 900, 902 (Ct. App. Dec. 21, 1987)). Impossibility excuses performance under very limited and narrowly defined circumstances. *Id* (internal citation omitted). Frustration of purpose "focuses on events which materially affect the consideration received by one party for his performance. Both parties can perform, but as a result of unforeseeable events, performance by party X would no longer give party Y what induced him to make the bargain in the first place." *U.S. v. General Douglas MacArthur Senior Village, Inc.*, 508 F.2d 377, 381 (2d Cir. 1974). Frustration of purpose is "limited to instances

where a virtually cataclysmic, wholly unforeseeable event renders the contract valueless to one party." *Id.*

Under New York law, changes in market conditions or economic hardship do not excuse performance. *See, e.g., Health-Chem. Corp. v. Baker*, 737 F.Supp. 770, 776 (S.D.N.Y. Feb. 26, 1990) (rejecting frustration of purpose defense based on "a change in market conditions" and stating that "[q]uite a bit more is required than demonstrating a desire to avoid the consequences of a deal gone sour"); *DiScipio v. Sullivan*, 816 N.Y.S.2d 576, 578 (Sup. Ct. Jun. 1, 2006) ("[W]here impossibility or difficulty of performance is occasioned only by financial difficulty or economic hardship, . . . performance of a contract is not excused."). Therefore, Glaze's loss of the Good Housekeeping contract, while a negative blow to the company, does not qualify as an impossibility or frustration of purpose defense.

Moreover, the reasoning applied above with respect to Bierer's refusal to come to work also applies to Glaze's frustration of purpose defense. Even though the loss of the Good Housekeeping contract may have complicated Glaze's performance, these circumstances would still constitute "any reason" for termination warranting payment of severance because they do not relate to "illegal activity." Thus, because of the clear language in the severance provision, Defendant cannot raise affirmative defenses for its nonperformance. *See Bank of New*

*York v. Tri Polyta Finance B.V.*, 2003 WL 1960687, at * 4 (S.D.N.Y. Apr. 25, 2003) ("[U]nconditional guarantees with clear and unambiguous terms are enforceable and bar the assertion of affirmative defenses.") (internal quotations omitted). Accordingly, summary judgment on the breach of contract claim is granted in favor of Plaintiff.


Second Claim: Quantum Meruit

Because I find that there was a valid contract between the parties, Plaintiff's second claim for relief, quantum meruit, is dismissed. *See, e.g., Goll v. First Tennessee Capital Markets*, 2006 WL 2135801, at *3 (S.D.N.Y. Aug.1, 2006) ("[U]njust enrichment and quantum meruit claims only apply when there is no express agreement between the parties."); *Phansalker v. Weinroth & Co.*, 2002 WL 1402297, at *14 (S.D.N.Y. Jun. 26, 2002) (stating that if defendant "was covered by an express employment agreement setting the terms of his compensation, he may not recover under a theory of quantum meruit or unjust enrichment").


Third Claim: Willful Failure to Pay Wages under the New York Labor Law

Plaintiff brings his third claim for relief under Sections 198(1) and 198(1-A) of Article 6 of the New York Labor Law ("NYLL"), which governs an employer's payment of wages and

benefits to certain employees.[8]  Defendant argues that the NYLL

is inapplicable because the claim is governed by New Jersey law.

Alternatively, defendant argues that the NYLL does not cover

Bierer because he was employed in an executive capacity.


*(A) Choice of Law*

Defendant states that, "Bierer was employed by a New Jersey

company which had its only office in New Jersey, and its New

Jersey office was where Bierer was employed."  Bierer also

collected New Jersey unemployment compensation.

As with the breach of contract claim, New York's choice-of-

law rules will determine which state's substantive law to apply

---

[8] Plaintiff states this claim as a claim made pursuant to NYLL § 198(1) in his complaint.  However, in their motion papers, both sides address NYLL § 198(c). Plaintiff concludes in its memorandum in support of its motion for summary judgment that "Plaintiff is entitled to all the benefits of NYLL § 198(c)." Section 198(c) imposes criminal penalties on employers who fail or refuse to pay employees their wages.  That section provides:

> 1.  In addition to any other penalty or punishment otherwise prescribed by law, any employer who is party to an agreement to pay or provide benefits or wage supplements to employees . . . and who fails, neglects or refuses to pay the amount or amounts necessary to provide such benefits or furnish such supplements within thirty days after such payments are required to be made, shall be guilty of a misdemeanor, and upon conviction shall be punished as provided in section one hundred ninety-eight-a of this article. Where such employer is a corporation, the president, secretary, treasurer or officers exercising corresponding functions shall each be guilty of a misdemeanor.

> 2.  As used in this section, the term "benefits or wage supplements" shall include, but not be limited to, reimbursement for expenses; health, welfare and retirement benefits; and vacation, separation or holiday pay.

> 3.  This section shall not apply to any person in a bona fide executive, administrative, or professional capacity whose earnings are in excess of six hundred dollars per week.

Consistent with the claims set out in Plaintiff's complaint, I consider Plaintiff's NYLL claims as falling under Section 198(1) and 198(1-a) rather than 198(c).

because New York is the forum state in this diversity action. *Klaxon v. Stentor Electric Manufacturing Co.*, 313 U.S. 487 (1941); *Machleder v. Diaz*, 801 F.2d 46 (2d Cir. 1986). According to New York choice-of-law rules, the law of the jurisdiction with the most significant contacts and the greatest interest in the litigation will be applied. *Index Fund, Inc. v. Insurance Company of North America*, 580 F.2d 1158 (2d Cir. 1978); *Fiske v. Church of St. Mary of the Angels*, 802 F.Supp. 872, 877 (W.D.N.Y. Apr. 23, 1992).

In *Fiske v. Church of St. Mary of the Angels*, the district court determined that New York Labor Law applied even though the Plaintiff and his employer were from Pennsylvania and the Plaintiff had received compensation benefits under Pennsylvania law. The court reasoned that the Plaintiff could bring a claim under the New York Labor Law because the accident underlying the claim occurred in New York and New York had a "strong interest in maintaining safety at work sites located in New York." *Fiske*, 802 F.Supp at 880. Moreover, the third party Pennsylvania corporation should have expected to be held accountable for claims arising under New York law because it had been incorporated to handle New York contracts. *Id.* at 881. This reasoning is also consistent with the principle articulated in other cases that foreign corporations doing business in New York must obey New York laws and conform to New York public policy.

*See Evvtex Co., Inc. V. Hartley Cooper Associates, Ltd.*, 102 F.3d 1327, 1331 n.6; *Trounstine v. Bauer, Pogue & Co.*, 44 F.Supp. 767, 770 ("When a foreign corporation comes into New York State and transacts its business here, it must yield obedience to its laws.").[9]

In this case, Plaintiff is a New York resident who conducted business on Glaze's behalf in New York primarily through a home office maintained in part by his employer.  Glaze has been doing business in New York for twenty years, and thus should have expected to be subject to New York laws.  In addition, New York has a strong interest in protecting its citizens from unfair treatment by their employers.  Accordingly, I conclude that New York has the most significant contacts to this claim and therefore the New York Labor Law applies.

*(B) Application of New York Labor Law*

New York Labor Law §§ 198(1) and (1)(a) provide that

1.  In any action instituted upon a wage claim by an employee . . . in which the employee prevails, the court may allow such employee in addition to ordinary costs, a reasonably sum, not exceeding fifty dollars for expenses which may be taxed as costs.

1(a).  In any action instituted upon a wage claim by an employee . . . , the court shall allow such employee reasonable attorney's fees and, upon a finding that the employer's failure to pay the wage required by this article was willful, an additional amount as liquidated damages

---

[9] A foreign corporation is one created by or under the laws of another state or by or under the laws of a foreign country.  *Home Owner's Loan Corp. V. Barone*, 298 N.Y.S. 531, 534 (Sup. Ct. 1937).

equal to twenty-five percent of the total amount of the wages found to be due.

"A claim for attorney fees predicated on Labor Law § 198 'is limited to wage claims based upon violations of one or more of the substantive provisions of Labor Law article 6.'" *Taylor v. Blaylock and Partners, L.P* ., 659 N.Y.S.2d 257, 260 (Sup. Ct., 1st Dept. Jun. 19, 1997) (quoting *Gottlieb v. Kenneth D. Laub & Co., Inc.*, 82 N.Y.2d 457, 459 (Ct. App., Nov. 23, 1993). Plaintiff has characterized Glaze's denial of his severance benefits as a willful failure to pay under article 6 and Defendant does not dispute that it did not pay Plaintiff those benefits.

"In order to state a claim under Article 6, a plaintiff must first demonstrate that he or she is an employee entitled to its protections." *Bhanti v. Brookhaven Memorial Hosp. Medical Center, Inc.*, 687 N.Y.S.2d 667, 669 (Sup. Ct., 2nd Div. 1999). Section 190(2) defines an employee as "any person employed for hire by an employer in any employment." NYLL § 190. Subsequent subprovisions specify the categories of employees covered by the statute, such as manual workers, railroad workers, commission salesmen, and other workers. *See* NYLL §§ 190(4)-(7). Section 190(7) states that "'clerical and other worker' includes all employees not included in subdivisions four, five and six of this section, except any person employed in a bona fide executive, administrative or professional capacity whose earnings are in

excess of six hundred dollars a week." NYLL § 190(7). Courts have construed this provision to mean that Article 6 does not cover employees in executive, administrative, or professional capacities. *See Rice v. Scudder Kemper Investments, Inc.*, 2003 WL 21961010, at *3 (S.D.N.Y. Aug. 14, 2003); *Gottlieb v. Kenneth D. Laub & Co.*, 82 N.Y.2d 457 (Ct. App., Nov. 23, 1993). Instead, the NYLL only covers "non-supervisory personnel." *Rice*, 2003 WL 21961010, at *3. New York courts have looked to an employee's title when determining whether an employee qualifies as an executive under Article 6. *Taylor v. Blaylock & Partners*, *L.P.*, 659 N.Y.S.2d 257, 260 (Sup. Ct., 1st Dept., Jun. 19, 1997) (rejecting plaintiff's Section 198 claims in part because his title, "co-director/managing director of defendant's structured real estate finance group," indicated his executive status); *see also Rice*, 2003 WL 21961010, at *4 (rejecting plaintiff's Section 198 claims in part because wages were due to him pursuant to terms of separation in an agreement identifying him as "CEO," an employee in an executive capacity).

Parties dispute whether Glaze employed Bierer in an executive capacity and thus whether he is excluded from coverage under the NYLL because his position was supervisory. Apart from identifying Bierer's title as "Director of Sales & Marketing – Good Housekeeping Division" pursuant to the employment agreement, parties do not discuss additional facts in support of their

arguments over whether Bierer was an executive or not. Glaze
worked frequently from home or on the road, and there is no
mention of Bierer having supervised other Glaze employees. Thus,
while Bierer was a "Director," whether his role was supervisory
or not is unclear. Because neither party has met its burden to
demonstrate that there is no issue of fact on this claim, summary
judgment on this claim is improper. *See U.S. v. One Tintoretto
Painting Entitled "The Holy Family with Saint Catherine and
Honored Donor"*, 691 F.2d 603, 606 (2d Cir. 1982) ("Uncertainty as
to the true state of any material fact defeats the motion [for
summary judgment]."); *Levanthal v. Franzus Co., Inc.*, 1988 WL
132868, at *8 (S.D.N.Y. Dec. 6, 1988) (denying summary judgment
because parties have presented evidence supporting opposing views
of a material fact); Fed. R. Civ. P. 56(c). Accordingly, the
parties' motions for summary judgment on this claim are denied.


Damages and Costs

Because Plaintiff has prevailed on the breach of contract
claim, Plaintiff may be entitled to damages. *Mobil Oil
Exploration and Producing Southeast, Inc. v. U.S.*, 530 U.S. 604,
629 (2000) (identifying damages as "the usual remedy for breach
of contract"); *see also* Restatement (Second) of Contracts §
346(1) (1981) ("The injured party has a right to damages for any
breach by a party against whom the contract is enforceable unless

the claim for damages has been suspended or discharged.").

"[T]he measure of damages from an employer's breach of an employment contract is what the employee would have earned under the contract, less what the employee actually earned or could have earned by reasonable diligence . . . ." 24 Williston on Contracts § 66:7 (4th ed.). Damages may also include any reimbursements or bonuses due under the contract. *See Canet v. Gooch Ware Travelstead*, 917 F.Supp. 969, 982 (E.D.N.Y. Feb. 21, 1996) (awarding bonus to wrongfully terminated plaintiff because employer had agreed to provide bonus pursuant to conditions that had been met) Hardy *v. Saliva Diagnostic Systems, Inc.*, 52 F.Supp.2d 333, 338 (D.Conn. 1999) (accepting jury instruction concerning plaintiff's entitlement to recover wages, "including any bonuses due"). Moreover, "where the employment contract unqualifiedly guarantees the employee a certain amount of severance pay upon discharge, the right to such pay is absolute . . . ." *Id*. Accordingly, Plaintiff may be entitled to damages arising from Defendant's breach of contract in the form of any outstanding salary, reimbursements, or bonuses due under the employment agreement, in addition to the severance pay and benefits under clause 14 of the employment agreement. Plaintiff may also be entitled to prejudgment interest. *See* Restatement (Second) of Contracts § 354 (1981)[10]; 25 Williston on Contracts §

---

[10] Section 354 of the Restatement (Second of Contracts) states that

(1) If the breach consists of a failure to pay a definite sum in money or

66:111 (4th ed.) (noting that "a considerable number of courts have determined that interest should be allowed where the claim . . . is of such a nature that its amount is readily ascertainable or capable of ascertainment by mere calculation or computation, or can be established with reasonable certainty"). However, because Plaintiff has not established that he is entitled to judgment as a matter of law or that there are no disputed issues of fact with respect to any of these categories of damages, summary judgment cannot be awarded to Plaintiff at this stage of the proceedings.

Regarding costs, under Rule 54(d)(1) of the Federal Rules of Civil Procedure, "costs other than attorneys' fees shall be allowed as of course to the prevailing party unless the court otherwise directs" except when express provision is made in a statute or elsewhere in the rules. No statute or other rule prohibits allowing costs to Plaintiff. Accordingly, costs may be awarded to Plaintiff. Whether Plaintiff is entitled to attorneys' fees cannot be determined until Plaintiff's New York Labor Law claim is resolved. Plaintiff is not entitled to attorneys' fees under his breach of contract claim alone. *See Alyeska Pipeline Service Co. v. Wilderness Society*, 421 U.S. 240,

---

to render a performance with fixed or ascertainable monetary value, interest is recoverable from the time for performance on the amount due less all deductions for which the party in breach is entitled.

(2) In any other case, such interest may be allowed as justice requires on the amount that would have been just compensation had it been paid when performance was due.

247 (1975), *cited in Presto v. Sequoia Systems, Inc.*, 633 F.Supp. 1113, 1122 (D.Mass 1986) (stating that "the prevailing party is ordinarily not entitled to collect a reasonable attorney's fee from the loser"); *Mid-Hudson Catskill Rural Migrant Ministry Inc. v. Fine Host Corp.*, 418 F.3d 168, 177 (2d Cir. 2005) ("[C]ourts applying New York law should not infer a party's intention to provide counsel fees as damages for a breach of contract unless the intention to do so is unmistakably clear from the language of the contract.") (internal citations omitted).

## Conclusion

For the aforementioned reasons, Plaintiff's motion for summary judgment is granted in part and denied in part. Defendant's motion for summary judgment is denied and the counterclaim is dismissed. The parties are directed to prepare for early trial with respect to Plaintiff's Labor Law claim, damages, and attorneys' fees.

The Clerk is directed to transmit a copy of the within to all parties and to the magistrate judge.

SO ORDERED.

Dated:     Brooklyn, New York
           October 5, 2006

                    By: /s/ Charles P. Sifton (electronically signed)
                        United States District Judge